IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. LANDON JOE BLACK, *Defendant.* | Case No. CR-23-183-JFH |

### BRIEF IN SUPPORT OF APPEAL OF MAGISTRATE JUDGE'S ORDER

COMES NOW the plaintiff, United States of America, by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Anthony C. Marek, and pursuant to Local Criminal Rule 12.1(J) and 18 U.S.C. § 3145, respectfully moves this Honorable Court to review and reverse the order of United States Magistrate Judge D. Edward Snow setting conditions of release as to Defendant and to enter a detention order under 18 U.S.C. § 3142(e).

### I. PROCEDURAL HISTORY

Defendant is named in a four-count indictment that charges him with two counts of production of child pornography, 18 U.S.C. §§ 2251(a) and (e), one count of advertisement of child pornography, 18 U.S.C. §§ 2251(d) and (e), and one count of possession of child pornography, 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (Doc. 3.) The United States filed a motion for pretrial detention (Doc. 8), and Defendant requested a detention hearing, which was held on October 30, 2023 before United States Magistrate Judge D. Edward Snow (Doc. 19). At the conclusion of the hearing, the magistrate judge ordered Defendant released with conditions. (Doc. 27.) The United States orally announced its intent to appeal the magistrate judge's release order, (Doc. 24), and filed a summary notice of appeal the same day (Doc. 23).

1

## II.  APPLICABLE LAW

### A.  Detention hearings and orders

"If, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).  "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under section . . . 2251 . . . of this title."  18 U.S.C. § 3142(e)(1).  "The facts the judicial officer uses to support a finding pursuant to [section 3142(e)] that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  18 U.S.C. § 3142(f).

### B.  Standard of review

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985)).

## III.  ANALYSIS

### A.  Charged conduct

Investigators identified a particular website on the Tor Network, colloquially known as the dark web, whose primary source was to appeal to users' sexual interest in underage males by facilitating the discussion, access, possession, receipt, and distribution of child pornography depicting boys who had not reached the age of 18 years engaging in sexually explicit conduct.

Whereas some of the child pornography shared on the website had been actively traded within and without the confines of the website, other material appeared to have produced for the purpose of sharing it with users on the website.  Users of the website were anonymous but were able to choose their own usernames to identify themselves and create profiles to describe themselves and their interests, including the range of ages of boys in whom they were sexually interested.  Transcript of Detention Hearing (Doc. 33), hereafter "Tr.," at 4-5.

Some users of the website discovered a method of enticing victims to produce child pornography of themselves, as directed by the users, and then to send the material to the users who then would make the material available for any user of the website to download and share.  They called this "baiting," because the user assumed a false identity, typically a physically attractive girl of similar age as their target — the bait — to establish contact with their target and propose to exchange illicit images and video of themselves.  Tr. 6-7.

One particular user of the website, who had a username known to law enforcement but who will herein be referred to as "the Subject User," frequently posted to the website advertising child pornography to download.  The material that the Subject User posted would feature typically, if not exclusively, one boy engaging in sexually explicit conduct and capturing images of his self, which is characteristic of the finished product of "baiting."  *Id.* at 6.  The Subject User boasted about his baiting and in some posts to the website described his process, which, as he observed, capitalized on the combination of the Subject User's deception and his victims' immaturity.  Of Minor Victim 5, for example, whom the Subject User claimed to have baited, the Subject User wrote, "[I]t helps that he just turned 13, so hes [*sic*] still very naive.  The same boy wouldn't have done any of this if he [was] baited at age 15 or 16 most likely."  The Subject User then posted links for other users of the website to follow to download child pornography depicting Minor Victim 5, including the victim exposing his anus and masturbating.  *Id.* at 27.

In April 2022, a foreign law enforcement source notified the Federal Bureau of Investigation that the Subject User was associated with an IP address in the United States. The same IP address had been associated with at least 14 reports from the National Center for Missing and Exploited Children's CyberTipline indicating that the IP address had been used to distribute child pornography featuring juvenile males as early as 2019. The FBI determined that the IP address was owned by the internet service provider OzarksGo, then served an administrative subpoena on OzarksGo for subscriber information associated with the IP address. OzarksGo responded that the service address for the IP address was 1215 Ridge Dr., Stilwell, Oklahoma, and that the subscriber was a person whom the FBI determined to be Defendant's mother. The FBI obtained a warrant authorizing their search of the residence, following which it seized several electronic devices that belonged to Defendant. The FBI also obtained a search warrant for the contents of Defendant's iCloud account and two orders under 18 U.S.C. § 2703(d) for Google and Apple accounts believed to have been controlled by Defendant. *Id.* at 7-8, 14.

Forensic review of Defendant's devices and cloud accounts revealed substantial evidence that Defendant was the Subject User. A text document that included the Subject User's username and password enabling login to the website. Minor Victim 1 and Minor Victim 2 disclosed in their forensic interviews that they sent sexually explicit images of themselves to "Emily Jansen" and "Jenna," respectively, and to no other person. Defendant's devices and cloud accounts contained evidence that Defendant controlled social-media accounts with those pseudonyms and a text document called "Girls List Names." Minor Victim 2, who was 13 years old when he sent sexually explicit images of himself to "Jenna," lives with his family within driving distance of Defendant's residence, which, considering Defendant's meticulous collection of the biographical information of boys who aroused his sexual interest, is a fact of which he is almost certain to have been aware. *Id.* at 8-11.

B. **Evidence regarding the § 3142(g) factors**

"The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning" the following factors. 18 U.S.C. § 3142(g).

§ 3142(g)(1)

Counts One, Two, Three, and Four are crimes of violence because they are felonies under chapter 110 of Title 18 of the United States Code. *See* 18 U.S.C. § 3156(a)(4)(C). Each count involves minor victims. The nature and circumstances of the offenses support a finding that the safety of the community cannot reasonably be assured should Defendant be released. Though the prosaic four corners of the indictment may not reveal much, Defendant's commission of these offenses, especially Counts One and Two, bespeak expert abilities not only in engaging with technology, but also in using technology to hide his identity and to deceive and manipulate people. In this light, the proposals of the magistrate judge and of the United States Probation Office to restrict Defendant's contact with witnesses and victims, and to monitor Defendant's computer and network use, however noble, are doomed to futility. NCMEC reports that point to Defendant's history of distributing child pornography, all while living with his father whom he now proposes to act as his custodian, cast doubt on Defendant's prognosis for following this Court's orders. Defendant's release would create an unacceptable risk of further harm to the community, in particular its most vulnerable members, beyond that which Defendant has already wrought.

§ 3142(g)(2)

The substantial evidence that points to Defendant as having been the Subject User supports entry of a detention order. The weight of the evidence against him creates a strong disincentive for Defendant to appear as required.

§ 3142(g)(3)

Defendant's character and past conduct support entry of a detention order. In a text document located in Defendant's iCloud account, written in the first person, Defendant admits that he has been a pedophile since he was 15 years old. Tr. 18. NCMEC CyberTipline reports indicate that Defendant has distributed child pornography using social-media platforms on several occasions beginning as early as 2019. *Id.* at 14.

The United States introduced evidence at the detention hearing that Defendant stalked at least two juvenile males. Defendant's iCloud data included a text document named "Operation Red Lucid." The document evinced Defendant's obsession with one particular boy, and included the boy's full name, date of birth, address, parents' names and dates of birth, siblings' names and dates of birth, social-media accounts, sports schedule, school, school address, school district, grade, class schedule, and an overhead map of the school campus. A second document, entitled "Red Lucid Plan," generated concern that Defendant intended to make contact with the boy. It described the author disguising their face so that they look like an old man, then renting a U-Haul truck. A text document regarding a second boy listed the boy's full name, parents' names and ages, father's email address, family address, parents' phone numbers, and the family's monthly rent. *Id.* at 15-17.

The magistrate judge emphasized Defendant's lack of criminal history in his decision to order Defendant released, but did not sufficiently credit this other evidence. Presumably, Congress included character and past conduct in the set of information to be considered at the detention stage because it concluded that the raw facts of an arrest, charge, or conviction, which not infrequently depend on luck and can invite poring over verdicts like tea leaves, is less salient than the complete picture of the person to be detained or released. The United States does not disagree that Defendant does not appear to have been convicted of any crime. It respectfully parts ways with the magistrate

judge in the assessment of how important that fact is to the decision that must be made here. The charged conduct, combined with other evidence of Defendant's character and past conduct, outweigh an apparent lack of criminal history. Defendant has harmed real children. A clear criminal history, on the other hand, is expected of everyone.

§ 3142(g)(4)

In Defendant's bedroom, agents located two AR-15-style rifles and ammunition thereto. *Id.* at 13-14. His father said that Defendant's firearms are now stored in a locked safe to which only Defendant's father has the combination. There was no information in the pretrial services report as to how this relocation came about. Defendant told a probation officer that he is able to work, but lost his desire to do so nearly one year ago, after agents searched his home and he anticipated criminal charges against him. This admission is highly probative both of Defendant's likelihood to appear as required and of the safety risk created by releasing Defendant pending trial.

It is generally accepted that people select their occupations and professions for reasons greater than lucre. Defendant's mother is not likely to have worked for the same company for over 20 years had she not derived some meaningfulness and satisfaction from it in addition to her financial compensation. When a 24-year-old man does not want to work, society is right to ask why. Here, no speculation is needed to see that Defendant's abstention comes from depression and despair, midwives of suicide, the potential for which some courts have viewed as grounds for pretrial detention. *See, e.g., United States v. Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480 (E.D. Mich. Sept. 12, 2016), at *5.

IV.  CONCLUSION

Defendant has not rebutted the presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. Dismissing the government's argument that Defendant's youthfulness and lack of exposure to the

criminal-justice system supported pretrial detention, the magistrate judge commented that to accept that argument would be to require pretrial detention in nearly every case. By the same token, however, a presumption in favor of detention that is capable of being fatally rebutted by an absence of criminal convictions and a life tenure in the community is hardly a presumption at all.

It is Defendant's conduct, not any judicial documentation of that conduct, that has harmed the community, and that creates a continuing risk to the community that the government seeks to avert. *See id.* at *5 ("In light of the Defendant's past behavior, the pervasiveness of wireless internet, and the immeasurable harm to child porn victims, this Court finds that the danger to the unknown minors favors detention of the Defendant."). Defendant, a technologically gifted distributor of child pornography of at least three years, has languished in his parents' home for nearly a year since a search warrant was executed there, attending neither work nor school. The government is not as optimistic as the magistrate judge and the United States Probation Office are that Defendant will not continue to target children from the privacy of his bedroom.

For the foregoing reasons, the United States respectfully requests that the Court grant its motion for detention (Doc. 8) and enter a detention order pursuant to 18 U.S.C. § 3142(e).

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/   Anthony C. Marek
ANTHONY C. MAREK
State Bar of Michigan #P76767
Assistant United States Attorney
520 Denison Ave.
Muskogee, OK 74401
(918) 684-5100
Anthony.Marek@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on November 6, 2023, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

  Jarred Lucas Jennings
  Counsel for Defendant

         s/  Anthony C. Marek
           ANTHONY C. MAREK
           Assistant United States Attorney