IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LANDON JOE BLACK,

    Defendant.

Case No. 23-CR-183-JFH

## OPINION AND ORDER

Before the Court is an Appeal of Magistrate Judge's Order and Brief in Support (together, "Appeal") filed by the United States of America (the "Government"). Dkt. Nos. 23, 34. The Government asks the Court to review and reverse the order of United States Magistrate Judge D. Edward Snow ("Judge Snow") setting conditions of release as to Defendant Landon Joe Black ("Defendant") pursuant to 18 U.S.C. § 3145. *Id.* Defendant filed a response in opposition to the Government's Appeal asking the Court to affirm Judge Snow's order setting conditions of release. Dkt. No. 42. As required, the Court will conduct a *de novo* review. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).

### BACKGROUND

On October 12, 2023, Defendant was charged by indictment with four counts: two counts of Sexual Exploitation of a Child/ Use of a Child to Produce a Visual Depiction, in violation of 18 U.S.C. §§ 2251(a) and (e); one count of Advertisement of Certain Material Involving the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2251(d) and (e); and one count of Possession of Certain Material Involving the Sexual Exploitation of a Minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). Dkt. No. 2. Defendant's initial appearance and arraignment were held on October 25, 2023. Dkt. Nos. 12, 13. At that time, Defendant moved for detention hearing,

which was set for October 30, 2023. Dkt. No. 18. At the detention hearing, the Government offered the testimony of Federal Bureau of Investigation ("FBI") Special Agent Austin McCourt ("Agent McCourt"). Dkt. No. 33. Additionally, both parties proffered evidence and presented argument. *Id*.

Agent McCourt testified that the FBI had launched an investigation into a website located on the Tor network, otherwise known as the dark web, after a foreign law enforcement entity informed the FBI that an IP address in the United States had been frequenting the website. Dkt. No. 33 at 4:15-16; 5:9-11. The website was used as a forum for discussions regarding sexual interest in pubescent and prepubescent boys and for the exchange of child pornography. *Id*. at 4:20-25; 5:1. The IP address was linked to a user (the "Subject User") who had posted to the website several times with links to images and videos of child pornography. *Id*. at 6:5-23. The posts explained that the Subject User had obtained the material by "baiting," or "catfishing," minor males into producing sexual imagery of themselves and then sending it to the Subject User. *Id*. at 6:18-25; 7:1-2. In this context, "baiting" involves creating a fake social media account purporting to be a minor female, contacting a minor male on social media using the fake account, and then convincing the minor male to produce and send sexual imagery of himself to the fake account. Dkt. No. 33 at 6:18-25; 7:1-2.

FBI agents determined that the Subject User's IP address was linked to a residence in Stillwell, Oklahoma and belonged to the internet subscriber Shelia Black, Defendant's mother. *Id*. at 5:9-11; 7:6-9, 12-15. The FBI obtained and executed a search warrant on the Stillwell residence, seizing computers, laptops, cellphones, and flash drives belonging to Defendant. *Id*. at 7:22-25; 8:1-6. Additionally, search warrants were obtained for Defendant's Google, Apple, and iCloud

accounts. *Id*. Agent McCourt explained that information obtained as a result of the search warrants directly linked Defendant to the Subject User. *Id*. at 8:1-17.

Additionally, two minor males were identified and forensically interviewed by FBI agents as part of the investigation. Dkt. No. 33 at 9:2-6. Minor Victim One ("MV1") disclosed that he was contacted via Instagram by an account under the name "Emily Jansen," who he believed to be a fourteen year old female. *Id*. at 9:9-14. MV1 identified images that he had produced and sent to "Emily Jansen" from images that were recovered on Defendant's devices. *Id*. Likewise, Minor Victim Two ("MV2") disclosed that he was contacted via Snapchat by an account under the name "Jenna Whitely," who MV2 believed to be a minor female. *Id*. at 9:17-21. MV2 also identified images that he had produced and sent to "Jenna Whitely" from images that were recovered from Defendant's devices. Dkt. No. 33 at 9:20-21. Further, usernames, passwords, profile pictures, and other account information for the "Emily Jansen" and "Jenna Whitely" social media accounts were found on Defendant's devices, along with a document titled "Girls List Names" which included the name "Jenna Whitely." *Id*. at 10:3-25;11:1-21.

Additionally on Defendant's devices, FBI agents found a folder titled "The Vault," which contained a significant amount of child sexual abuse material. Dkt. No. 33 at 13:2-11. Agents also discovered documents on Defendant's devices with personal identification information for various minor males, including names, birthdays, addresses, family member information, and information regarding school districts and class schedules. *Id*. at 15:21-25; 16:1-10; 18:2-10. Finally, agents determined that the IP address had been the subject of approximately fourteen cyber tips related to child sexual abuse material dating back to 2019 and further found a document on

Defendant's devices in which he stated that he "believed he was a pedophile at the age of 15." *Id*. at 14:7-9; 15:3-4; 18:11-18.

In response, defense counsel proffered evidence that Defendant has significant ties to his community. Dkt. No. 33 at 30-31. In particular, Pastor Gary Flynn and Deacon Dan Kirk of Salem Baptist Church wrote letters in support of Defendant and his character noting their belief that Defendant "is overall a good individual[,] . . . has a good attitude, and [is] willing to help whenever he's needed." *Id*. at 30:21-25; 31:1-8. Defense counsel further proffered evidence that Defendant would continue to reside with his parents while on pretrial release and that his parents have agreed to ensure his compliance "with all court orders and bond conditions" and ensure his presence at all future court dates. *Id*. at 31:9-15.

At the conclusion of the hearing, Judge Snow found that the Government had failed to show by clear and convincing evidence that there were no conditions or combination of conditions which would assure the appearance of Defendant and protect the safety of any other person or the community. Dkt. No. 33 at 48:3-9. Judge Snow explained that while the nature and circumstances of the offenses charged were serious and the weight of the evidence against Defendant was substantial, this did not outweigh Defendant's history and characteristics, nor the Government's failure to demonstrate the nature and seriousness of the danger to others posed by Defendant's release. *Id*. at 49:8-17. In particular, Judge Snow noted that Defendant has no prior criminal history and had not engaged in any further criminal or concerning behavior since the search warrant was executed on his residence in connection with the charged crimes in December of 2022. *Id*. at 49:18-25. Judge Snow also noted that Defendant did not have a history of violence or substance abuse, but rather had a stable residence, significant ties to the community, and parents who agreed to serve as his custodians and transportation. *Id*. at 50:1-17. Noting that the charged

crimes were exclusively committed via electronic means, Judge Snow found that conditions of pretrial release, including home detention and computer monitoring, could reasonably protect the safety of the community from further crimes by Defendant. Dkt. No. 33 at 18-24.

The Government announced its intention to appeal Judge Snow's order on the record and filed its summary appeal that day. *Id*. at 55:7-9; Dkt. No. 32. Following a briefing scheduling order entered by this Court, the Government filed its brief in support on November 6, 2023 and Defendant filed his response on November 13, 2023. Dkt. Nos. 28, 34, 42.

## STANDARD

Under 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate judge . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" 18 U.S.C. 3145(a). Upon such an appeal by the government, the district court must conduct a *de novo* review of a magistrate judge's release order and make "an independent determination of the proper pretrial detention or conditions for release." *Cisneros*, 328 F.3d at 613. There is no statutory requirement for a hearing, and the district court may make its determination on the briefing alone. *Id.* at 617.

Under the Bail Reform Act of 1984, the Court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the Court must consider:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) The weight of the evidence against the person;

(3) The history and characteristic of the person, including –

    a. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. Whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

 (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

  The child pornography charges against Defendant in this case establish a rebuttable presumption "that no condition or combination of conditions will reasonably assure [his appearance] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E); *see also United States v. Kroeker*, 2022 WL 2610344, at *2 (10th Cir. July 8, 2022). Defendant, therefore, bears the burden of producing evidence to rebut the presumption. *See United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam). "Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* at 1355. At the same time, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* at 1354-55.

## ANALYSIS

### I. Nature and Circumstances of the Offense

  In addition to possessing child pornography, Defendant is charged with deceiving and manipulating minor males into sending sexual imagery of themselves—including exposing their genitals, anus, and masturbating— and then advertising to trade or exchange this imagery with other adults online. This conduct not only victimizes minor children, it perpetuates further

6

victimization of minor children by encouraging others to produce, obtain, trade, exchange, and view child pornography. This conduct goes beyond passive possession and involves actively participating in the creation and dissemination of child pornography. This conduct also involves direct communication with minor children. This factor weighs heavily in favor of detention.

## II.     Weight of the Evidence

The record before the Court indicates that the weight of the evidence is strong. In particular, discovery consists of electronic records supporting the allegations in the indictment and connecting Defendant to the Subject User, the social media accounts that baited MV1 and MV2, and child pornography. Furthermore, Defendant has not disputed the weight of the evidence for purposes of a detention determination. This factor weighs in favor of detention.

## III.    History and Characteristics of Defendant

Defendant is twenty-four (24) years old and a lifelong resident of Adair County, Oklahoma. Defendant has resided with his parents at the Stillwell, Oklahoma residence since 2014. Defendant has ties to the community by way of his family and his involvement with Salem Baptist Church. Defendant reports no history of substance abuse or mental health concerns. Defendant does not have any prior criminal history. Defendant also points out that he has known of the criminal investigation and pending charges since his home was searched by the FBI in December 2022 and there is "no evidence that he has participated in any criminal activity" since that time. Dkt. No. 42 at 4.

The Court acknowledges that generally a lack of criminal history and a lack of criminal activity since becoming aware of pending charges would weigh in favor of release. However, given the difficulty in detecting those involved in child pornography crimes, it is not uncommon for defendants charged with such crimes to present with a lack of prior criminal history. *See e.g.,*

*United States v. Edwards*, Case No. 22-10043-JWB, 2022 WL 2952550, at *3 (D. Kan. July 26, 2022). Similarly, the Court acknowledges that strong community ties also generally weigh in favor of release. However, those involved in child pornography crimes typically attempt to conceal their conduct from their family members and community. Evidence before the Court suggests that this conduct has occurred since at least 2019, which would suggest that Defendant avoided detection from his community and law enforcement for at least four years. Considering all the facts and circumstances, the Court finds that this factor is neutral.

## IV.     Danger to the Community

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). The Tenth Circuit has recognized the "long-standing serious physiological, emotional, and mental difficulties of children who have been sexually exploited" as a result of being a victim in child pornography. *United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001) (citing *New York v. Ferber,* 458 U.S. 747, 758-60 (1982)); *see also United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *2 (10th Cir. July 8, 2022) (upholding district court finding that release of defendant facing child pornography charges would pose "a high risk to the community, and particularly to minors who are unable to protect themselves" ) (internal quotations omitted). The danger to the community here, should Defendant be released, is that he would find new ways of, at a minimum, accessing child pornography, if not surreptitiously eliciting and distributing child pornography. This undoubtedly supports a finding of danger to the community here.

Defendant contends, however, that because the conduct occurred exclusively over the internet, there are conditions that would ensure the safety of the community, such as monitoring

or limiting Defendant's access to the internet during his pretrial release and relying on "third party monitoring by his parents." Dkt. No. 42 at 5-6.  The Court is not convinced.

Today, the internet is easily accessible in a variety of different ways, including computers, laptops, cellphones, iPads, smart watches, smart TVs, e-readers, and video game consoles.  The Court finds it unlikely that Defendant's access to the internet can be completely monitored or restricted while on pretrial release.  This is especially true where Defendant would be living at home with his parents, who undoubtedly have their own devices that have access to the internet.  S*ee e.g., United States v. Renander*, 431 F. Supp. 3d 1240, 1246 (D. Colo. 2020); *United States v. Davin*, No. 12-10141-EFM, 2012 WL 2359419, at *3 (D. Kan. June 20, 2012).  Even if Defendant's personal devices are confiscated, Defendant would likely still have ways to access the internet in his home.  Further, while Defendant's parents have agreed to act as his custodians while on pretrial release, the Court has serious doubts about their ability to adequately monitor Defendant.  Defendant lived with his parents during the time of the charged conduct and he was able to successfully conceal his illicit activity from them.  *See id.*  Finally, as previously discussed, the specific circumstances of this case involve deliberate acts of deception and concealment of Defendant's activity and identity, which only increases the Court's concern.  For these reasons, the Court finds that there is not a combination of conditions that can reasonably ensure the community's safety and, therefore, this factor weighs in favor of detention.

All factors taken as a whole, the Court finds that the available information shows by clear and convincing evidence that Defendant's release would pose a serious danger to the community

and that there are no conditions or combination of conditions that would reasonably assure the safety of the community if Defendant were released.

## CONCLUSION

IT IS THEREFORE ORDERED that the Order Setting Conditions of Release [Dkt. No. 27] is REVOKED and the Government's Appeal [Dkt. No. 23] is GRANTED.

IT IS FURTHER ORDERED that Defendant Landon Joe Black shall be detained pending trial. Defendant Landon Joe Black is hereby committed to the custody of the Attorney General, pending trial, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel and, upon an order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is held shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 27th day of November 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE